**Date Signed:**
**September 25, 2026**

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF HAWAII**

| | |
|---|---|
| In re:<br><br>Joan-Maree Lai Sea Sasaki,<br><br>Debtor. | Case No. 25-00663<br>Chapter 13 |
| U.S. BANK NATIONAL ASSOCIATION, as Trustee for GSAA Home Equity Trust 2007-1, Asset-Backed Certificate, Series 2007-1,<br><br>Plaintiff,<br><br>vs.<br><br>Joan-Maree Lai Sea Sasaki,<br><br>Defendant. | Adv. No. 26-90014<br><br>Related ECF No.: 17 |

**<u>MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

In this adversary proceeding, U.S. Bank National Association, as Trustee for GSAA Home Equity Trust 2007-1, Asset-Backed Certificate, Series 2007-1 ("U.S. Bank"), seeks to enforce a promissory note made by Debtor Joan-Maree Lai Sea Sasaki and to foreclose a mortgage made by Ms. Sasaki and her husband, Dave Kazuo Sasaki. Ms. Sasaki seeks summary judgment, arguing primarily that the loan is void because the lender made misrepresentations in the loan application process.

For the following reasons, I must deny the motion.

## I. Undisputed Facts

Ms. Sasaki has filed a concise statement of material facts and declarations by herself and her husband that recount the history of the loan in question and authenticate certain documents.[1] Contrary to Local Rule 56.1, US Bank has not filed a concise statement of material facts. Further, U.S. Bank has offered only a declaration of its attorney authenticating certain documents and has not offered any declarations from anyone who was involved in the origination of the loan.[2] Based on these filings, there is no genuine dispute as to the following material facts.

In October 2006, Ms. Sasaki spoke to an agent of AMC Mortgage Services, Inc. ("AMC"), about obtaining a mortgage loan to refinance the

[1] ECF 18.

[2] ECF 23.

existing mortgage on her home. In response to the agent's questions, Ms. Sasaki told the agent that her income was between $2,500 and $3,000 per month. Ms. Sasaki never told anyone that her income was $16,000 per month (except possibly in the loan application described below).

AMC's agent told Ms. Sasaki that he could secure a fixed-rate loan for about $800,000 for her, and all she had to do was sign the forthcoming documents.

On October 24, 2006, a notary came to the Sasakis' home with documents for them to sign. The notary did not show them all of the documents but instead told them only which documents to sign and where to sign. The notary did not give them the documents to review before signing and said that she could not answer any questions about the loan. I infer from the Sasakis' testimony that, while the notary did not invite or encourage them to read the documents, the notary did not prevent them from doing so. The Sasakis did not read the documents and signed all of the documents as requested. The notary did not leave copies of the documents with the Sasakis but instead said that they would receive copies later in the mail.

Among the documents that Ms. Sasaki signed on October 24, 2006, was a Uniform Residential Loan Application.[3] AMC, not the Sasakis,

---

[3] ECF 17-5.



U.S. Bankruptcy Court - Hawaii #26-90014 Dkt # 29 Filed 09/25/26 Page 3 of 12

completed this document. The application falsely stated that Ms. Sasaki's income was $16,000 per month.

Ms. Sasaki also signed a promissory note in the original principal amount of $811,960 and bearing interest at an adjustable rate beginning at 6.75%.[4] Mr. and Mrs. Sasaki both signed a mortgage encumbering their home to secure the note.[5]

The loan closed shortly after the Sasakis signed the loan documents.

At some point, likely around September 2010, the Sasakis defaulted in their obligations under the note and mortgage.[6]

In 2014, U.S. Bank filed a complaint in state court against Ms. Sasaki and AMC (the "First Case"). The complaint alleged that U.S. Bank was the beneficial owner of the note and mortgage although an assignment of the mortgage was drafted but never completed as intended. U.S. Bank further alleged that it was "unable to obtain a validly executed assignment of mortgage from AMC."[7] The complaint sought only a declaratory judgment that U.S. Bank is the legal and beneficial owner and holder of the note and mortgage. The complaint did not seek enforcement of the note or foreclosure of the mortgage. The court denied U.S. Bank's motion for summary judgment on the grounds that (1) AMC had endorsed the note in

[4] ECF 1 at 50.
[5] ECF 1 at 14.
[6] ECF 1 at 6.
[7] ECF 17-8 at 3.

favor of U.S. Bank, and (2) the mortgage follows the note under Hawaii law, meaning there was no real dispute justifying declaratory relief.[8] The court later dismissed the First Case for failure to prosecute.

In 2016, U.S. Bank filed another complaint in state court against the Sasakis, AMC, and others (the "Second Case"). U.S. Bank alleged that AMC had endorsed the note in favor of U.S. Bank and had also executed an assignment of mortgage, but that the assignment could not be recorded because it did not include the number of the certificate of title covering the Sasakis' property, and that U.S. Bank had been unable to obtain a proper assignment from AMC.[9] The complaint sought a declaratory judgment that U.S. Bank was the holder of the mortgage (the same claim stated in the First Case) and foreclosure of the mortgage (a claim not stated in the First Case).

U.S. Bank moved the court to dismiss the Second Case without prejudice.[10] The motion stated that, under Hawaii case law, a foreclosing lender must prove that it properly sent notice of default before it filed its complaint and that, although U.S. Bank believed that a prior servicer of the loan had mailed a notice of default to the Sasakis, it could not obtain admissible evidence of that fact. The Sasakis did not oppose dismissal of the Second Case but argued that the court should dismiss the case with

[8] ECF 17-9.

[9] ECF 17-11 at 3-4.

[10] ECF 23 at 28.

prejudice and allow them to recover their fees and costs.[11] The court granted U.S. Bank's motion and dismissed the Second Case without prejudice. The court also denied the Sasakis' request for fees and costs and held that U.S. Bank could not obtain a deficiency judgment against Ms. Sasaki in a subsequent case.[12]

In February 2025, U.S. Bank sued the Sasakis in state court (the "Third Case"). The complaint did not seek declaratory relief and sought only enforcement of the note and foreclosure of the mortgage.[13]

On July 29, 2025, Ms. Sasaki commenced a chapter 13 bankruptcy case in this court. This invoked the automatic stay and prevented further prosecution of the Third Case.

On the same day, Ms. Sasaki removed the Third Case to this court, where it became this adversary proceeding.[14]

## II. <u>Discussion</u>

### *a. Genuine Disputes of Material Fact About The Loan Origination*

Under Civil Rule 56(a), made applicable by Rule 7056, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden of demonstrating an absence of a

---

[11] ECF 23 at 38.

[12] ECF 17-12

[13] Consistent with the order dismissing the Second Case, the complaint in the Third Case did not seek a deficiency judgment. ECF 1 at 9.

[14] ECF 2.

genuine issue of material fact.[15] I must view the evidence in the light most favorable to U.S. Bank, the non-moving party, and draw all justifiable inferences in its favor.[16]

All of Ms. Sasaki's claims rest on her and her husband's testimony that (1) she told AMC that her income was $2,500 to $3,000 per month and AMC falsely completed the loan application to reflect that her income was $16,000 per month, and (2) AMC promised her a fixed rate loan but actually delivered a variable rate loan.

U.S. Bank does not offer the testimony of anyone who was involved in the origination of the loan or any conversations the Sasakis had with AMC. Instead, U.S. Bank relies entirely on the fact that Ms. Sasaki signed the loan application and promissory note.

The Sasakis' account is plausible. Nothing suggests that Ms. Sasaki earned anything close to $16,000 per month, totaling $192,000 per year. U.S. Bank does not directly rebut their testimony.

But I cannot say that U.S. Bank's account is so implausible that no reasonable finder of fact could accept it. Ms. Sasaki admittedly signed documents in which she stated that her income was $16,000 and accepted a variable interest rate. She must have suspected that something was amiss

---

[15] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986).
[16] *Fresno Motors, LLC v. Mercedes Benz USA, LLC,* 771 F.3d 1119, 1125 (9th Cir. 2014).



U.S. Bankruptcy Court - Hawaii #26-90014 Dkt # 29 Filed 09/25/26 Page 7 of 12

when she received her first bill for a monthly mortgage payment. The interest alone on the loan would have amounted to over $4,500 per month, which was more than her monthly gross income.

If the parties had offered at trial only the evidence they have offered in connection with the motion, I would be free to weigh that evidence, and I would probably rule in favor of Ms. Sasaki. But on a motion for summary judgment, I must give U.S. Bank the benefit of the doubt. Ms. Sasaki has not carried her burden of showing that there is no genuine dispute of material fact.

*b. Liability of U.S. Bank Under Haw. Rev. Stat. ch. 480 As AMC's Assignee.*

U.S. Bank argues that Ms. Sasaki cannot enforce her claims against it because it is an assignee of AMC, the alleged wrongdoer. This argument is unfounded. "[E]ven where there is no evidence the current holder of the note and mortgage violated HRS chapter 480, § 480–12 can nevertheless provide a basis for rendering [the holder's] note and mortgage void and unenforceable based on certain types of unfair or deceptive acts or practices committed by others in the loan consummation process."[17]

[17] *U.S. Bank Nat. Ass'n v. Smith*, 137 Haw. 53, 56 (Haw. App. 2016).

Further, Ms. Sasaki argues that U.S. Bank independently violated chapter 480 because it knew it was not entitled to enforce the note and mortgage when it commenced the First Case and the Second Case.

As to the First Case, this argument lacks logic. U.S. Bank filed the First Case in order to obtain a declaratory judgment resolving questions about its entitlement to foreclose. The court declined to grant that relief, but it is at least plausible that U.S. Bank was entitled to ask the question.

As to the Second Case, it is significant that the state court refused Ms. Sasaki's request to dismiss that case with prejudice. U.S. Bank can plausibly assert that the state court did not find that the Second Case was so egregious that it amounted to an unfair or deceptive trade act or practice.

*c. Timeliness of Ms. Sasaki's contentions*

U.S. Bank argues that Ms. Sasaki's chapter 480 claims concerning the loan's origination are time-barred.[18] Ms. Sasaki does not respond to this argument.

Chapter 480 creates claims for unfair and deceptive trade acts and practices. An action under chapter 480 "shall be barred unless commenced within four years after the cause of action accrues," subject to exceptions that do not apply here.[19] A claim under chapter 480 "accrues . . . four years from the date of the occurrence of the violation, as opposed to Plaintiff's

[18] ECF 17 at 14.
[19] Haw. Rev. Stat. § 480-24.

discovery of the violation."[20] A chapter 480 claim based on the origination of a loan accrues when the borrower signs the loan documents,[21] or possibly when the loan closes.[22]

The alleged misrepresentations concerning Ms. Sasaki's income and the loan terms occurred in October 2006, when she signed the loan documents and the loan closed. Ms. Sasaki did not bring her chapter 480 claims in the Third Case until 2026.

U.S. Bank correctly points out that that Ms. Sasaki does not argue or prove any basis for tolling or delayed accrual. Therefore, summary judgment must be denied.

*d. Abuse of process and Intentional Infliction of Emotional Distress*

Ms. Sasaki argues that U.S. Bank committed abuse of process when it commenced the First and Second Cases.

To prevail on the abuse of process claim, Ms. Sasaki must prove that U.S. Bank "employed process primarily for an ulterior purpose," and committing "a wilful act not proper in the regular conduct of the underlying case."[23]

---

[20] Heejoon Chung v. U.S. Bank, N.A., 250 F. Supp. 3d 658, 671 (D. Haw. 2017).

[21] *Swartz v. City Mortgage, Inc.*, 911 F.Supp. 916, 941 (D. Haw. 2012).

[22] *Teaupa v. U.S. Nat. Bank*, 836 F.Supp. 2d 1083, 1099 (D. Haw. 2011).

[23] *Young v. Allstate Ins. Co.*, 119 Haw. 403, 414 (2008); *Id*. at 416,



U.S. Bankruptcy Court - Hawaii #26-90014 Dkt # 29 Filed 09/25/26 Page 10 of 12

Under Hawaii law, to prevail on a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must prove that the defendant's conduct was intentional or reckless, was outrageous, and caused the plaintiff extreme emotional distress.[24] Conduct is outrageous when it is without just cause or excuse and exceeds all bounds of decency.[25]

Thus, both of these claims turn on the alleged violator's purpose and intention. Ms. Sasaki offers no direct evidence of the purpose or intentions of AMC or U.S. Bank. She argues that U.S. Bank filed the First Case, Second Case, and Third Case improperly, but she offers only argument, and not evidence, about their mental state. After a trial, the finder of fact might make inferences about the purposes and intentions of AMC and U.S. Bank from their conduct. But on a motion for summary judgment, I must draw all inferences in favor of U.S. Bank. These means that, for purposes of this motion, I must infer that U.S. Bank sought and intended only to collect a loan that Ms. Sasaki received. Therefore, I must deny summary judgment on the abuse of process and IIED claims.

*e. The "Two Dismissal Rule"*

Ms. Sasaki argues that the court must dismiss the complaint pursuant to the "two dismissal" rule of Fed. R. Civ. P. 41(a)(1)(B), made applicable by Fed. R. Bankr. P. 7041. She is incorrect.

---

[24] *Id*. at 425.

[25] *Id*. at 430.



U.S. Bankruptcy Court - Hawaii #26-90014 Dkt # 29 Filed 09/25/26 Page 11 of 12

Rule 41(a)(1) only applies when the plaintiff dismisses a case without a court order. In such a situation, the dismissal is without prejudice, unless the notice or stipulation of dismissal states otherwise, or "the plaintiff previously dismissed any federal- or state-court action based on or including the same claim . . . ."

The First Case and Second Case were both dismissed by a court order. Therefore, Rule 41(a)(2) applies, and that rule does not include a "two dismissal" provision.

Further, the claims in the First, Second, and Third Cases do not completely overlap. This case (the Third Case) includes only foreclosure claims. U.S. Bank asserted those claims in the Second Case, but not in the First Case. Thus, the foreclosure claims have not been dismissed twice. The First and Second Cases both included claims for declaratory relief, but there are no such claims in the Third Case.

Because the prior dismissals were effectuated by the court order, and the requisite overlap of identical claims is absent, the "two dismissal" rule does not operate to bar this action.

## III. Conclusion

For these reasons, the motion for summary judgment is DENIED.

**END OF ORDER**



U.S. Bankruptcy Court - Hawaii #26-90014 Dkt # 29 Filed 09/25/26 Page 12 of 12